UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ROGER HOAN BRADY,                                        Case No. 3:12-cv-00850-MC

                      Petitioner,              **OPINION AND ORDER**

        v.

DANIEL CUEVA, Warden of California
Medical Facility; JEFF MACOMBER,
Secretary of the California Department
of Corrections and Rehabilitation; and
ELLEN F. ROSENBLUM, Oregon Attorney
General,

                 Respondents.[1]

_____

MCSHANE, Chief Judge.

      Petitioner brings this habeas action pursuant to 28 U.S.C. § 2254 challenging his state

court convictions for Aggravated Murder, Attempted Aggravated Murder, and Robbery in the

_____

[1] Subsequent to his Oregon convictions, Petitioner was extradited to California to face charges of Aggravated Murder arising from the 1993 fatal shooting of a police officer. Petitioner was found guilty and sentenced to death, and he remains incarcerated in California. Resp't Ex. 101 at 5-6; *People v. Brady*, 50 Cal. 4th 547, 236 P.3d 312 (2010).

**1 - OPINION AND ORDER**

First Degree. Petitioner claims that the trial court erred in numerous respects and that his trial and appellate counsel provided constitutionally ineffective assistance. Most of Petitioner's claims are unexhausted and procedurally defaulted, and Petitioner's preserved claims were denied by the Oregon courts in a decision that is entitled to deference. Petitioner fails to establish entitlement to habeas relief, and the Second Amended Petition is DENIED.

BACKGROUND

On the night of August 3, 1994, Petitioner entered a Safeway store in Cedar Mill, Oregon, dressed in a long hooded coat, gloves, and a ski mask. Transcript (Tr.) 923, 940, 952.[2] As he entered the grocery store, Petitioner passed Catalina Correa, who was exiting. Correa commented to another customer, "He's got something in his pocket, and I'm not going to stick around to find out what it is." Tr. 944.

Petitioner approached a cashier, pulled out a semi-automatic handgun, and ordered the cashier to open the till. Tr. 909-10. The cashier complied and Petitioner took $385.00 from the till drawer and exited the store. Tr. 1321. As Petitioner walked to his car, he encountered Correa, who was standing near the car. Petitioner shot Correa in the chest and in the back of her neck, killing her. Tr. 960-63.

Andrew Dickson was entering the Safeway parking lot and witnessed Correa's shooting. Dickson observed Petitioner get into his vehicle and followed Petitioner as he drove away, noting Petitioner's license plate number. Tr. 983-85. After a short distance, Petitioner stopped his vehicle and shot at Dickson's van with a rifle, shattering the windshield. Tr. 986-87. Dickson called the police from a nearby home and reported the shootings and Petitioner's license plate number. Tr. 990-91.

---

[2] Citations to the transcript refer to the page numbers in the bottom right hand corner, e.g., "Transcript, Page 923 of 3643."

**2 - OPINION AND ORDER**

Police traced the license plate number to an apartment in Vancouver, Washington, where Petitioner lived with his parents, Philip and Diep Brady. Tr. 1032-34, 1044-45. Police surveilled the apartment and twice observed a man carrying trash bags walk from the area of Petitioner's apartment to a dumpster. Tr. 1046-48. Police searched the dumpster and recovered a tan jacket and windbreaker. Tr. 1109-11.

The next morning, on August 4, 1994, police arrested Petitioner and searched his parents' apartment. Tr. 1166-69. During the search, police found a locked, fireproof Industry safe under the sink in the master bathroom. Tr 1141. Inside the safe, police discovered a pair of blue gloves, a pair of gray wool gloves, a Davis P-380 semiautomatic pistol,.380 caliber ammunition, a box of ammunition for a 7.62x39 caliber rifle, a ski mask, and a white envelope containing $1,000 in cash. Tr. 1117-20. When questioned, Petitioner denied any involvement in the Safeway robbery.

On August 7, 1994, Diep Brady found a blue sleeping bag on the patio of their apartment, with a locked case inside of the bag. The case contained an SKS Norenco brand 7.62x39 semi-automatic rifle. Tr. 1083-85, 1116.

A ballistics expert determined that a shell casing found near Correa's body had been fired by the handgun found in the Industry safe in Petitioner's apartment. Tr. 1227-28. The expert also determined that a shell casing found on the street near Dickson's vehicle had been fired from the SKS rifle found inside the blue sleeping bag. Tr. 1095, 1233-34.

Petitioner was charged by indictment with two counts of Aggravated Murder, two counts of Attempted Aggravated Murder, and one count of Robbery in the First Degree. Resp't Ex. 102. The State sought the death penalty.

During the guilt phase of trial, Petitioner's counsel focused on the requisite mental state to commit Aggravated Murder and Attempted Aggravated Murder. Petitioner's counsel argued

**3 - OPINION AND ORDER**

that the "robber" was surprised when he saw Correa standing near his car and that the State had not proven the intent to shoot and kill her. Tr. 1404-07, 1417-19. Counsel similarly argued that the State failed to prove that the robber attempted to kill Dickson rather than simply "scare him off." Tr. 1410, 1419-21. The jury found Petitioner guilty of all charged offenses. Tr. 1506-07.

During the penalty phase, Petitioner waived his right to seek a life sentence with the possibility of parole and agreed that the jury could consider the penalties of death or life without the possibility of parole. Tr. 3459-65. Before accepting Petitioner's waiver, the trial court explained the ramifications of his decision and confirmed that Petitioner understood his rights.

The jury recommended that Petitioner be sentenced to life without the possibility of parole. Tr. 3595-97. The trial court merged the verdicts into one conviction for Aggravated Murder and one conviction for Attempted Aggravated Murder and imposed a term of life in prison without the possibility of parole and a consecutive, departure sentence of 120 months. Tr. 3629-38; Resp't Ex. 101 at 8-11.

Petitioner directly appealed and challenged the trial court's imposition of a "departure sentence consecutive[] to a life sentence without possibility of parole." Resp't Ex. 103 at 2. The Oregon Court of Appeals affirmed without opinion and Petitioner did not seek review with the Oregon Supreme Court. Resp't Ex. 105.

Petitioner then sought post-conviction relief (PCR) in state court. Petitioner asserted nine claims of ineffective assistance of appellate counsel, twenty-seven claims of ineffective assistance of trial counsel, and seventy-one claims of trial court error. Resp't Ex. 106. The PCR court denied relief on all claims. Resp't Exs. 160, 162. On PCR appeal, Petitioner challenged only the denial of five claims asserting the ineffective assistance of trial and appellate counsel.

**4 - OPINION AND ORDER**

Resp't Exs. 163, 166. The Oregon Court of Appeals affirmed without opinion and the Oregon

Supreme Court denied review. Resp't Exs. 168-69.

During the investigation of Correa's murder, police detectives discovered evidence

connecting Petitioner to the 1993 fatal shooting of a police officer in Manhattan Beach,

California. Tr. 1535, 1575-76, 1597. After being tried in Oregon, Petitioner was extradited to

California to face Aggravated Murder charges. The California jury returned a guilty verdict and

recommended the death penalty, finding Petitioner's Oregon murder conviction to be one of

several aggravating factors. *See People v. Brady*, 50 Cal. 4th 547, 236 P.3d 312 (2010). The trial

court followed the jury's recommendation and imposed a sentence of death. *Id.* On direct appeal,

Petitioner's conviction and sentence were upheld. Petitioner then sought post-conviction relief

and his California post-conviction proceeding remains pending. *See* Pet'r Status Report (ECF

No. 136); Pet'r Response to OSC (ECF No. 87).

On February 24, 2012, Petitioner sought federal habeas relief in this action. In February

of 2014, Petitioner asked that this case be stayed until he was appointed counsel in his California

post-conviction action, so that California counsel could confer and coordinate with federal

habeas counsel in this action. The Court granted the request and entered a stay. For several years,

Petitioner reported that he had yet to be appointed counsel in his California proceeding, and the

stay remained in effect.

As of November 2023, counsel still had not been appointed in Petitioner's California post-

conviction action, and the Court lifted the stay.[3] Petitioner filed a Second Amended Petition and

the parties submitted briefing. The Second Amended Petition is now ripe for review.

---

[3] The Governor of California imposed a moratorium on executions and the State's death
row has been dismantled. As of March 2021, Petitioner was no longer housed on death row and
had moved to a new institution. *See* Pet'r Status Report dated March 11, 2021 (ECF No. 120).

**5 - OPINION AND ORDER**

# DISCUSSION

Petitioner asserts eighteen Grounds for Relief in his Second Amended Petition. *See*

*generally* Sec. Am. Pet. (ECF No. 146). Respondent argues that, because Petitioner presented

only five subparts of Ground Six to the Oregon courts, his remaining claims are procedurally

defaulted and barred from federal review. Respondent further argues that the PCR court

reasonably rejected Petitioner's exhausted claims and that its decision is entitled to deference.

## A.  Exhaustion and Procedural Default

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

state remedies, thereby giving the State the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal

quotation marks and citation omitted). To meet the exhaustion requirement, a petitioner must

present all federal constitutional claims to the State's highest court before seeking federal habeas

relief. *Id.*; *Cooper v. Neven,* 641 F.3d 322, 326 (9th Cir. 2011) ("Exhaustion requires the

petitioner to 'fairly present' his claims to the highest court of the state."). "A petitioner fully and

fairly presents a claim to the state courts if he presents the claim (1) to the correct forum; (2)

through the proper vehicle; and (3) by providing the factual and legal basis for the claim." *Scott*

*v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (per curiam) (internal citations omitted).

If a claim was not fairly presented to the state courts and no state remedies remain

available for the petitioner to do so, the claim is barred from federal review through procedural

default. *See Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991); *Sandgathe v. Maass*, 314

F.3d 371, 376 (9th Cir. 2002) ("A procedural default may be *caused* by a failure to exhaust

federal claims in state court."). A federal court may consider unexhausted and procedurally

barred claims only if the petitioner demonstrates cause for the default and actual prejudice, or if

the lack of federal review would result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451(2000); *Coleman*, 501 U.S. at 750.

On direct appeal, Petitioner challenged only the trial court's imposition of a "departure sentence consecutively to a life sentence without possibility of parole." Resp't Ex. 103 at 2. The Oregon Court of Appeals affirmed without opinion and Petitioner did not seek review with the Oregon Supreme Court. Resp't Ex. 105.

On PCR appeal, Petitioner challenged the PCR court's denial of five claims alleging the ineffective assistance of trial and appellate counsel, and these claims correspond with Grounds Six(D)(2),(3), Six(E), Six(G)(2), and Six(H) in Petitioner's Second Amended Petition. *See* Resp't Exs. 163, 166-67. Petitioner did not fairly present his remaining Grounds for Relief to Oregon's highest court, either on direct or PCR appeal. Petitioner can no longer exhaust these claims and they are procedurally defaulted.

Petitioner does not dispute that these claims are unexhausted or assert cause and prejudice to excuse their procedural default.[4] Rather, Petitioner simply states that they are "arguably" exhausted without presenting a legal or factual basis for this contention. *See* Pet'r Brief at 46. Accordingly, Grounds One through Five, Grounds Six(A)-(C), (D)(1),(4)-(8), (F), (G)(1),(3), and (H), and Grounds Seven through Eighteen are unexhausted and barred from federal review through procedural default.[5]

---

[4] In his Second Amended Petition, Petitioner contends that the procedural default of his claims should be excused under the "miscarriage of justice" exception based on his actual innocence. Sec. Am. Pet. at 9. Petitioner does not argue this claim in his supporting brief and fails to present new evidence showing the likelihood that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 315, 327 (1995).

[5] Even though Petitioner did not dispute his failure to exhaust all claims of trial court error, Petitioner presents argument in support of Grounds Five and Ten, which allege equal protection and due process violations arising from the improper exclusion of a juror under *Batson v. Kentucky* and the erroneous admission of character testimony by Correa's daughter,

**7 - OPINION AND ORDER**

**B.  Deference to State Court Decisions**

Petitioner's exhausted Grounds for Relief allege that trial counsel provided ineffective assistance by: 1) failing to object to testimony about Correa's life and character; 2) stipulating to the prepared testimony of Diep Brady; and 3) waiving Petitioner's right to have the jury consider life with the possibility of parole and failing to adequately advise him about that right. *See* Sec. Am. Pet. at 7-8. Petitioner also alleges that appellate counsel was ineffective by failing to assign error to the denial of Petitioner's *Batson* objection and failing to ensure that the appellate record included a transcript of voir dire. *Id.* at 8. The PCR court rejected these claims on the merits and Respondent argues that its decision is entitled to deference.

Pursuant to 28 U.S.C. § 2254(d), this Court may not grant a petition for a writ of habeas corpus filed by a state prisoner with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) and (2).

A state court decision is "contrary to" clearly established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an

---

Esperanza Hursh. Pet'r Brief at 21-32, 43-46. Petitioner asserts that Grounds Five and Ten are reviewable because they were exhausted as claims alleging the ineffective assistance of counsel. Petitioner is incorrect; exhaustion of an ineffective assistance of counsel claim does not exhaust an underlying or related claim of constitutional error. *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005). Because Petitioner also argues that trial and appellate counsel were ineffective by failing to object to Hursh's testimony and failing to raise Petitioner's *Batson* challenge on appeal, I consider Petitioner's arguments in the context of the claims asserted in Grounds Six(D)(2), (G)(2), and (H).

**8 - OPINION AND ORDER**

"unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). A petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Thus, "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001).

Under the well-established Supreme Court precedent of *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner alleging the ineffective assistance of counsel must show that "counsel's performance was deficient" and the "deficient performance prejudiced the defense." 466 U.S. at 687. To establish deficiency and prejudice, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Unless a petitioner "makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Judicial review of an attorney's performance under *Strickland* is "highly deferential" and must afford counsel "wide latitude…in making tactical decisions." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In short, a petitioner must overcome

the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (citation omitted). Finally, a "doubly deferential" standard applies when "a federal court reviews a state court's *Strickland* determination." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). On federal habeas review, the state court "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101.

1. <u>Ineffective Assistance of Trial Counsel</u>

**a. Testimony of Esperanza Hursh**

In Ground Six(D)(2), Petitioner argues that trial counsel unreasonably failed to object to the testimony of Esperanza Hursh, Correa's daughter.

During the guilt phase of trial, Hursh testified that Correa had been a registered nurse for over twenty-five years and most recently worked at St. Vincent's Hospital in Outpatient Eye Services. Tr. 1174. When asked to describe her mother, Hursh confirmed that Correa was "a good Samaritan," "helpful to people," "an extrovert" and "inquisitive." *Id.* Hursh further testified that, after family friend at Safeway called her about Correa's shooting, Hursh rushed to the crime scene and saw a body lying under a yellow tarp near Petitioner's car. Tr. 1177-78. Hursh began yelling at the paramedics, providing Correa's medical history and telling them to help her. *Id.*

Petitioner argues that Hursh's testimony regarding Correa's character was irrelevant during the guilt phase of trial, and that counsel was deficient for failing to object on those grounds. Petitioner maintains, without elaboration or factual support, that the prejudice arising from the failure to object "is undeniable." Pet'r Brief at 45-46.

The PCR court found that Petitioner failed to prove that counsel acted unreasonably or that an objection to Hursh's testimony "would have had legal merit and would have been

granted." Resp't Ex. 160 at 4. I agree that reasonable trial counsel could have chosen not to object to Hursh's testimony, and the PCR court did not unreasonably apply *Strickland* when rejecting this claim.

As the daughter of a murder victim, Hursh was a sympathetic witness and counsel could have reasonably concluded that the jury would look unfavorably upon a party who objected to Hursh's testimony about her mother. Further, Hursh's description of Correa's traits was brief and not overly prejudicial, particularly when Petitioner's primary defense was that he did not intend to kill her. The State also presented overwhelming evidence of Petitioner's guilt, and he fails to show a reasonable likelihood that the result of trial would have been different if counsel had objected to Hursh's testimony. *See generally* Tr. 867-1439. Accordingly, Petitioner fails to sustain his burden on this claim.

### b.  Stipulated Testimony of Diep Brady

In Ground Six(D)(3), Petitioner claims that trial counsel unreasonably stipulated to the admission of Diep Brady's prepared testimony during the guilt phase of trial. After consulting with Petitioner, his counsel, and the court, the prosecutor set forth the stipulated facts to which Diep Brady would have testified, as follows in pertinent part:

> In early April, 1994, [Mr. and Mrs. Brady and Petitioner] moved to Vancouver, Washington…[and] leased an Apartment 278X at the Brentwood Apartments….
>
> [Diep Brady] would further testify that on August 3rd, 1994, … at 8:30 p.m., she was watching television and Mr. Brady, the [Petitioner], was in his bedroom.
>
> * * * * *
>
> That at approximately 9:30, [Petitioner] left the Brentwood Apartments. That he was driving the Daihatsu automobile and that he was wearing a tan jacket and jeans.

11 - OPINION AND ORDER

At approximately 11:00 o'clock p.m., Mrs. Brady woke up after falling asleep on the couch and went to bed in the master bedroom. Shortly thereafter, the [Petitioner] returned home.

On August 4, 1994, she and her husband were asked to leave the apartment by the Vancouver Police Department SWAT team, and they did and were escorted to the office where they were told that the [Petitioner] was going to be arrested for armed robbery and the murder of a woman.

Later on that morning, officers showed Mrs. Brady two jackets, and Mr. Brady was present. Mrs. Brady identified the tan jacket with the red and black plaid lining as the [Petitioner]'s jacket, and she would so state that the [Petitioner] was wearing that tan jacket the evening before when he left the apartment at approximately 9:30 p.m. She could not identify the windbreaker….

Also on the morning of August 4, 1994, officers showed her and her husband the Industry safe. She had never seen it before. It did not belong in the cabinet in the master bathroom.

…On Sunday, August 7, 1994, … Mrs. Brady…went out onto the patio area [of the apartment] to water some flowers.

While there, she noticed a blue sleeping bag standing upright along the left side of a refrigerator, which is outside on the patio…. When Mr. Brady returned from the market, she showed him what she had found. Mr. Brady unzipped the sleeping bag and found a black case inside.

* * * * *

Mrs. Brady recognized the blue sleeping bag, as she had seen it under the [Petitioner]'s bed on several occasions. Mrs. Brady had never seen the black gun case before. She had never seen the SKS military style rifle before. She had never seen the .380 semiautomatic pistol before.

Tr. 1321-25.

Petitioner argues that Diep Brady's prepared statements would have been inadmissible without his stipulation and counsel should have insisted that the State call her as a witness against him. Petitioner argues that he suffered prejudice from the stipulation, because Diep Brady's stipulated testimony corroborated that: 1) Petitioner was wearing a tan jacket when he left the apartment on August 3, 1994; 2) the tan jacket found in the dumpster near the apartment

**12 - OPINION AND ORDER**

was Petitioner's; and 2) Petitioner owned a blue sleeping bag similar to the one found with an SKS rifle inside.

Petitioner fails to show that the PCR court unreasonably rejected this claim. Petitioner personally agreed to Diep Brady's stipulated testimony after consulting with counsel, and the trial court repeatedly informed Petitioner of his right to confrontation and found that his waiver was knowing and voluntary. Tr. at 1274-76. In fact, Petitioner concedes that the trial court cleared the courtroom, gave defense counsel the opportunity to advise Petitioner about his confrontation rights, and obtained specific written stipulations before accepting Petitioner's "knowing, voluntary, and intelligent waiver of his right to question and confront Diep Brady." Pet'r Brief at 40.

To the extent Petitioner contends that counsel was deficient by advising him to agree to the stipulation, reasonable counsel could have determined that Diep Brady's stipulated testimony would be less prejudicial than her live testimony and avoid a situation where Petitioner's mother would be forced to testify against him. Moreover, Petitioner stated on the record that he was satisfied with his counsel's advice regarding the stipulation. *See* Tr. 1276, 1285-87.

Petitioner also fails to show prejudice. Petitioner presented no evidence that Diep Brady's prepared statements were inaccurate, that she would have refused to testify, or that she would have testified differently on the stand. Thus, Petitioner fails to demonstrate a reasonable probability of a different trial outcome had counsel advised against the stipulation, and he is not entitled to habeas relief on this ground.

### c. Waiver of Life with the Possibility of Parole

In Ground Six(E), Petitioner claims that trial counsel "waived" his right to have the jury consider a sentence of life with the possibility of parole and failed to "effectively advise"

Petitioner regarding the waiver of that right. Sec. Am. Pet. at 8. In his supporting brief, Petitioner contends that habeas relief is required, because "nothing on the record" indicates that Petitioner "was made aware of the consequences of abandoning this right, and that he was making the waiver freely and of his own volition." Pet'r Brief at 41. Petitioner maintains that that "the trial court engaged in no colloquy with Brady and made no statement to Brady concerning the consequences of abandoning the parole option." *Id.* Petitioner is patently incorrect.

The transcript of record makes clear that the trial court ensured Petitioner's waiver was voluntary, knowing, and intelligent by engaging in a lengthy colloquy with Petitioner, explaining the consequences of Petitioner's waiver, and repeatedly asking Petitioner whether he voluntarily agreed to waive the option of life with the possibility of parole. Tr. 3459-66. Petitioner stated that he understood the decision was his to make and repeatedly affirmed that he chose to waive the option of life with the possibility of parole. *Id.* Even then, the trial court allowed Petitioner to consider his decision until the following day, and Petitioner did not withdraw his waiver. Tr. 3465-66, 3468-69. At that time, the court found that Petitioner's waiver was knowing and "freely and voluntarily made" and permitted Petitioner to "withdraw that question from the jury." Tr. 3469.[6] In no way did trial counsel "usurp" or "unilaterally" waive Petitioner's rights. Pet'r Brief at 38, 42.

---

[6] Petitioner also argues that the PCR court erred by placing the burden on Petitioner to "submit evidence proving that counsel compelled Brady to abandon a life-with-the-possibility-of-parole sentencing option." Pet'r Brief at 39. However, it is well established that a petitioner bears the burden to show entitlement to post-conviction relief. *See Lopez-Minjarez v. Kelly*, 336 Or. App. 544, 547-48 (2024) ("A petitioner claiming inadequate assistance of counsel … has the burden 'to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result.'") (quoting *Trujillo v. Maass*, 312 Or. 431, 435 (1991); *see also Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (a federal habeas petitioner bears the burden of proving claims).

**14 - OPINION AND ORDER**

Petitioner also fails to show that counsel was deficient in advising him to waive the option of life with the possibility of parole. During the guilt phase of Petitioner's trial, the State presented overwhelming evidence that Petitioner shot an innocent bystander to a robbery and attempted to murder a witness to the shooting. During the penalty phase, the State presented evidence that Petitioner was convicted of six armed bank robberies in 1989, and after his release from prison in 1992, that Petitioner murdered a California police officer in front of the officer's nephew and robbed five other Safeway stores. *E.g.,* Tr. 1523-24, 1644-58.

Given the facts of Correa's murder and Petitioner's criminal history, trial counsel reasonably advised Petitioner to forgo the possibility of parole in an attempt to sway the jury against the imposition of death and provide assurance to the jury that Petitioner would remain incarcerated for life. The record reflects that Petitioner agreed with this strategy, even if "reluctantly." Resp't Ex. 149 at 67.

Petitioner also fails to show prejudice. Petitioner's criminal history demonstrated his proclivity to commit violent crimes despite his prior convictions and incarceration, and the facts of Correa's murder and Dickson's attempted murder reflected a disregard for the sanctity of life. Based on this record, Petitioner fails to show a reasonable likelihood that a jury would have found life with the possibility of parole to be appropriate punishment for Correa's murder and Dickson's attempted murder. Habeas relief is denied on this ground.

### 2. Ineffective Assistance of Appellate Counsel

In Grounds Six(G)(2) and (H), Petitioner claims that appellate counsel provided ineffective assistance by failing to challenge the trial court's denial of Petitioner's *Batson* objection and failing to ensure that the appellate record contained the voir dire transcript to support this claim.

**15 - OPINION AND ORDER**

During voir dire, the State exercised a peremptory challenge against a potential juror, who apparently was Buddhist.[7] Petitioner's counsel objected to the State's peremptory challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), arguing that the challenge was based on the juror's religion as a Buddhist and discriminatory. Petitioner was not Buddhist and the trial court apparently questioned whether he made an adequate showing of a discriminatory challenge. In response to Petitioner's objection, the prosecutor argued that the juror's answers during voir dire made the prosecutor question whether the juror would follow the law and the court's instructions. The trial court overruled Petitioner's objection and the juror was excused. *See* Pet'r Ex. to Am. Pet. (ECF No. 20 at 3) (counsel's memo to file).

On direct appeal, Petitioner's appellate counsel designated all "testimony and exhibits offered and/or received in evidence at the trial" on the dates corresponding with voir dire and the guilt phase. Resp't Ex. 135. For unknown reasons, the voir dire transcripts were not prepared and are not part of the record.[8] Ultimately, appellate counsel raised only one assignment of error challenging Petitioner's sentence for Attempted Aggravated Murder and did not assign error to the trial court's denial of Petitioner's *Batson* challenge. Resp't Ex 103.

During Petitioner's PCR proceeding, PCR counsel attempted to obtain the voir dire transcript from Washington County. Resp't Ex. 135. Due to the length of time since Petitioner's

---

[7] Because the record does not contain the voir dire transcript, Petitioner relies on a memo to file purportedly created by trial counsel that summarizes Petitioner's *Batson* objection, the State's response, and the trial court's ruling. *See* Pet'r Ex. to Amended Petition (ECF No. 20 at 3). Respondent does not contest Petitioner's reliance on this memo or argue that the memo is not properly before the Court.

[8] Petitioner makes the unsupported assertion that the State "suppressed" and caused the "destruction" of the voir dire transcript. Pet'r Brief at 23, 25, 28, 29, 31, 32. Any implication that the State intentionally withheld or destroyed the transcript is unwarranted and does not further the argument that Petitioner should be excused for failing to establish the factual basis of his claim or that he may rely on other evidence, such as counsel's memo to the file.

**16 - OPINION AND ORDER**

trial, Washington County no longer had the court reporter's notes and could not provide the transcript. Resp't Ex. 135 at 6.

Petitioner argues that reasonable appellate counsel would have raised a *Batson* argument on appeal and ensured that the voir dire proceedings were transcribed and available for review. Petitioner maintains that appellate counsel's failure to do so caused prejudice, because Petitioner's *Batson* challenge would have been successful on appeal or PCR review, and counsel could not effectively argue that the juror's exclusion was erroneous without a voir dire transcript.

The PCR court rejected these claims, finding that Petitioner failed to prove that appellate counsel acted unreasonably or that "the denial of petitioner's *Batson* challenge, had the issue been raised as error on direct appeal, would more likely than not have changed the outcome of petitioner's case." Resp't Ex. 160 at 6. These findings were reasonable.

At the time of Petitioner's appeal, the Supreme Court had not extended *Batson* to religious affiliation or belief. *See, e.g., Davis v. Minnesota,* 511 U.S. 1115 (1994) (denying certiorari to review a state supreme court decision declining to extend *Batson* to religion). Given the tenuous nature of Petitioner's *Batson* challenge, appellate counsel was not deficient by failing to raise an argument that was not supported by binding precedent and was unlikely to succeed on appeal. *See Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) (holding that counsel is not ineffective for failing to raise claims that lack merit); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."). For the same reason, Petitioner cannot show that the outcome of his appeal or PCR proceeding would have been different if appellate counsel had obtained voir dire transcripts and assigned error to denial of his *Batson* challenge. Thus, the PCR court reasonably found that appellate counsel did not render ineffective assistance.

**17 - OPINION AND ORDER**

In sum, Petitioner fails to show that the PCR court unreasonably applied *Strickland* when denying his claims, and he is not entitled to federal habeas relief.

## **CONCLUSION**

The Second Amended Petition for Writ of Habeas Corpus (ECF No. 146) is DENIED and Respondent's Motion to Strike (ECF No. 163) is GRANTED. Petitioner did not obtain leave of Court to file an untimely, pro se Sur-Reply and the Sur-Reply and pro se supplemental filings (ECF Nos. 162, 165-71) are STRICKEN.

A Certificate of Appealability is DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 3rd day of April, 2025.

s/Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge

**18 - OPINION AND ORDER**